FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 11, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ELTON HERNANDEZ CASTRO; and KRISTINE NICHOLLE HERNANDEZ, <br><br> Plaintiffs, <br><br> v. <br><br> ALEJANDRO MAYORKAS, United States Secretary of the Department of Homeland Security; ANTONY J. BLINKEN, United States Secretary of State; and ERIC S. COHAN, Consul General of the United States, City of Ciudad Juarez, <br><br> Defendants. | No. 2:21-CV-00315-SAB <br><br><br> **ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |

Before the Court is Defendants' Motion to Dismiss the Amended Complaint, ECF No. 6. Plaintiffs are represented by Clayton Cook-Mowery. Defendants are represented by Elissa Fudim. The motion was considered without oral argument. Having considered the briefing and the applicable caselaw, the Court denies Defendants' motion.

### Background

U.S. citizens and lawful permanent residents of the United States can petition for an immigrant visa for their immediate noncitizen relative by engaging in a two-step process. First, the U.S. citizen or lawful permanent resident must file

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** # 1

a petition with U.S. Citizenship and Immigration Services ("USCIS") known as a Form I-130 (Petition for Alien Relative). *See* 8 U.S.C. § 1154(a)(1); 8 C.F.R. § 204.2. Second, if the petition is approved, the noncitizen can apply to the State Department for a visa. *See* 8 U.S.C. §§ 1201(a), 1202(a). As part of the visa application process, the noncitizen must appear for an in-person interview at a U.S. consulate abroad. 22 C.F.R. §§ 42.61-62.

However, if the noncitizen applying for the visa has been unlawfully present in the United States for more than one year, the noncitizen must submit a Form I-601A, Application for Provisional Unlawful Presence Waiver, prior to departing the United States for their consulate interview. Otherwise, if the noncitizen departs the United States without receiving this waiver, they become inadmissible to the United States and are ineligible for a visa for ten years from their date of departure. 8 U.S.C. § 11282(a)(9)(B); *but see also* 8 C.F.R. § 212.7(e) ("A pending or approved provisional unlawful presence waiver does not constitute a grant of a lawful immigration status or a period of stay authorized by the Secretary.").

The decision whether to grant or deny a visa application rests with the consular officer. *See* 8 U.S.C. § 1201(a)(1). If the consular officer finds that the noncitizen is ineligible for a visa, the officer must deny the visa. 8 U.S.C. § 1201(g). Moreover, if the consular officer finds that the noncitizen is ineligible based on a ground of inadmissibility other than unlawful presence in the United States, the noncitizen's provisional unlawful presence waiver is automatically revoked. 8 C.F.R. § 212.7(e)(14)(i). In order to request reconsideration of a visa denial, the noncitizen must (1) remain outside of the United States; (2) reapply for a new provisional unlawful presence waiver; and (3) after obtaining this waiver, request reconsideration of their visa application. *See id.*; 22 C.F.R. § 42.81(e). Upon denial of a visa application, if the noncitizen (1) requests reconsideration within one year of the denial and (2) provides evidence that overcomes the ground

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** # 2

of ineligibility on which the denial was based, the consulate officer must reconsider the denial. 22 C.F.R. § 42.81(b), (e).

As part of the visa application process, the noncitizen must submit to a physical and mental examination. 8 U.S.C. § 1201(d). If the medical examination is performed abroad, the examination is conducted by a panel physician selected by the U.S. Department of State embassies and consulates.[1] After the examination, the panel physician will complete certain forms, which they then submit to the consular office. A noncitizen can be found ineligible for a visa if they do not meet certain medical eligibility requirements, including if the noncitizen has not received the vaccinations recommended by the Advisory Committee for Immunization Practices. 8 U.S.C. § 1182(a)(1)(A)(ii) ("Any [noncitizen] . . . who has failed to present documentation of having received vaccination against vaccine-preventable diseases, which shall include . . . any [] vaccinations against vaccine-preventable diseases recommend by the Advisory Committee for Immunization Practices . . . is inadmissible.").

## Facts and Procedural History

The following facts are drawn from Plaintiffs' First Amended Complaint, ECF No. 5.

Plaintiffs Elton Hernandez Castro ("Mr. Hernandez Castro") and Kristine Nicholle Hernandez ("Ms. Hernandez") are a married couple. Ms. Hernandez is a U.S. citizen, whereas Mr. Hernandez Castro is not.

On July 30, 2018, Mrs. Hernandez filed a Form I-130 Family Petition on behalf of Mr. Hernandez Castro, which was approved on March 22, 2019. On November 14, 2019, Mr. Hernandez Castro then applied for a Form I-601A

---

[1] U.S. Centers for Disease Control and Prevention, *Medical Examination: Frequently Asked Questions (FAQs)* (Oct. 4, 2021), https://www.cdc.gov/immigrantrefugeehealth/about/medical-exam-FAQs.html.

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** # 3

(Application for Provisional Unlawful Presence Waiver), which was approved on April 30, 2021. Finally, on September 27, 2021, Mr. Hernandez Castro was informed that his consular interview for an immigrant visa had been scheduled for October 7, 2021 in Mexico. Mr. Hernandez Castro was also informed that, as part of his visa application, he was required to undergo a medical examination on October 5, 2021, also in Mexico.

On October 1, 2021, the Advisory Committee for Immunization Practices added the COVID-19 vaccination to its recommendations for all immigrant visa applicants. However, agency regulations also set out circumstances under which blanket waivers of this vaccination requirement were appropriate, including if the panel physician performing the medical examination determined that the vaccine was "not routinely available" and was not expected to be available within four months following the examination date.

Here, when Mr. Hernandez Castro appeared for his medical examination on October 5, 2021, he was not vaccinated for COVID-19. However, Mr. Hernandez Castro alleges that the panel physician performing his medical examination failed to consider whether the COVID-19 vaccine was routinely available in Mexico. In fact, Mr. Hernandez Castro alleges that the physician told him that this determination was one that would be made by the consulate, rather than by the physician.

When Mr. Hernandez Castro attended his consulate interview on October 7, 2021, he was told that his immigration visa was denied on two grounds: (1) because he had not received the COVID-19 vaccine, as required by the CDC; and (2) because he had been found to be inadmissible for having been unlawfully present in the United States. Additionally, because Mr. Hernandez Castro was found to be inadmissible on a basis other than unlawful presence, the consulate revoked his previously-approved Form I-601A (Application for Provisional Unlawful Presence Waiver).

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** # 4

After his visa denial, Mr. Hernandez Castro obtained the COVID-19 vaccination. He states that he is now fully vaccinated and has provided this proof of vaccination to both the panel physician and the consulate in Mexico. However, Plaintiffs state that Defendants have not reconsidered Mr. Hernandez Castro's initial visa denial.

Plaintiffs filed their Complaint on November 3, 2021. ECF No. 1. Plaintiffs then filed an Amended Complaint on January 11, 2022, with the consent of Defendants' counsel. ECF No. 5. In the First Amended Complaint, Plaintiffs alleged claims for declaratory and injunctive relief under the Due Process Clause of the Fifth Amendment to the U.S. Constitution and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-559. Specifically, Plaintiffs alleged that Defendants violated due process and the APA when the panel physician failed to consider whether the vaccine was routinely available, which led to the denial of Mr. Hernandez Castro's visa application. Plaintiffs also pled a mandamus claim and requested an order (1) requiring Defendants to reconsider their initial visa denial; and (2) if, upon reconsideration, Mr. Hernandez Castro was no longer found to be inadmissible on any other ground, requiring Defendants to reinstate his Form I-601A waiver.

Defendants filed the present Motion to Dismiss on January 25, 2022. ECF No. 6. The Court has not yet set a trial date in this matter.

### Legal Standard

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal if the plaintiff's complaint fails to sufficiently allege federal subject matter jurisdiction. However, "jurisdictional dismissals in cases premised on federal-question jurisdiction are exceptional" and are permitted only when the claim is "patently without merit." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

//

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS # 5**

When the jurisdictional question is intertwined with the merits of the case, the matter is treated nearly like a Rule 12(b)(6) motion. A jurisdictional determination is intertwined with the merits of a case when a statute provides the basis for both subject-matter jurisdiction and the plaintiff's substantive claim for relief. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039-40 (9th Cir. 2004).

Rule 12(b)(6) allows a party to move for dismissal if the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Dismissal under this rule is only proper if there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When considering a 12(b)(6) motion, the court accepts the allegations in the complaint as true and construes the pleading in the light most favorable to the party opposing the motion. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). However, this does not require the Court "to accept as true legal conclusions couched as factual allegations." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1221 (9th Cir. 2020).

To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Levit v. Yelp!, Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (requirements of notice pleading are met if plaintiff makes a short and plain statement of their claims). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations must be enough to raise the right to relief above a speculative level. *Twombly*, 550 U.S. at 555.

### Discussion

Defendants request that the Court dismiss Plaintiffs' First Amended Complaint. Specifically, Defendants argue that (1) the Court lacks jurisdiction over

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** # 6

Plaintiffs' APA claim because Plaintiffs have not plausibly alleged that the panel physician was an agent of Defendants and/or that his failure to consider vaccine availability constituted final agency action; (2) Plaintiffs' APA claim is non-justiciable under both the Immigration and Naturalization Act's ("INA") statutory scheme and the doctrine of consular nonreviewability; (3) Ms. Hernandez has failed to state a procedural due process claim both because the Government provided a facially legitimate and bona fide reason for denying her husband's visa and because of the doctrine of consular non-reviewability; (4) Ms. Hernandez has failed to state a substantive due process claim because there is no liberty interest protecting family unity or her right to have her noncitizen husband reside unlawfully with her; and (5) Plaintiffs have failed to state a claim for mandamus because they have not identified a non-discretionary, ministerial act which is indisputably owed to them.

Plaintiffs in response concede that (1) their substantive due process claim and (2) their claims insofar as they ask the Court to review the denial of Mr. Hernandez Castro's visa fail to state a claim and thus should be dismissed. However, Plaintiffs argue that they have plausibly alleged APA, procedural due process, and mandamus claims based on the panel physician's failure to consider whether the vaccine was routinely available. Plaintiffs further argue that the Court has jurisdiction over these claims and that they are appropriate for judicial review. Finally, Plaintiffs argue that they have pled sufficient facts to create genuine disputes of material fact, which precludes the Court's ability to resolve this case at the motion to dismiss stage.

Defendants in reply argue that Plaintiffs are essentially trying to evade the doctrine of consular nonreviewability by framing their APA and procedural due process claims as a challenge to Defendants' processes, rather than to their ultimate decision to deny Mr. Hernandez Castro's visa. However, Defendants state that, under Ninth Circuit precedent, this kind of challenge is still precluded under the

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** # 7

doctrine. Additionally, Defendants reiterate that Plaintiffs' mandamus claim fails because (1) Plaintiffs have not met the standard for mandamus relief; and (2) even if they did meet the standard, they still would not be entitled to the relief they seek because, under agency regulations, the only avenue through which a noncitizen can seek reinstatement of their Form I-601A waiver is through reapplication.

### 1.   Plaintiffs' APA claim

Plaintiffs argue that Defendants violated the APA because the panel physician failed to consider whether the COVID-19 vaccine was routinely available for Mr. Hernandez Castro and thus whether a blanket waiver would be appropriate. Defendants argue that Plaintiffs' APA claim fails for multiple reasons, specifically that (1) the Court lacks jurisdiction over the claim because there was no final agency action; and (2) even if the Court did have jurisdiction, the Court is precluded from judicial review based both on the INA's statutory scheme and the doctrine of consular nonreviewability.

Federal administrative agencies are required to engage in "reasoned decisionmaking." *Michigan v. E.P.A.*, 576 U.S. 743, 750 (2015). "Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational." *Id*. (quoting *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998)).

The Administrative Procedure Act, 5 U.S.C § 551 *et seq.*, provides the judicial authority to review executive agency action for procedural correctness. *F.C.C v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009). The APA requires a court to "hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or (D) without observance of procedure required by law." 5 U.S.C. § 706(2).

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** # 8

Final agency actions are arbitrary and capricious if the agency fails to "examine relevant data," "consider an important aspect of the problem," or "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). This Court's review of an agency decision "is based on the administrative record and the basis for the agency's decision must come from the record." *Gill v. U.S. Dep't of Justice*, 913 F.3d 1179, 1187 (9th Cir. 2019) (quotation omitted). Such review is narrow; the Court may not substitute its own judgment for that of the agency. *Fox*, 556 U.S. at 513.

Not every violation of the APA invalidates an agency action. *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 969 (9th Cir. 2015) (citing *Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1121 (D.C. Cir. 2010)). Rather, the opponent of the action has the burden to demonstrate that an error is prejudicial. *Id.* The required demonstration of prejudice is not particularly onerous. *Id.* "If prejudice is obvious to the court, the party challenging agency action need not demonstrate anything further." *Id*. (quoting *Jicarilla*, 613 F.3d at 1121).

### a.    Whether the Court has jurisdiction over this claim

Defendants argue that the Court lacks jurisdiction over Plaintiff's APA claim on two grounds: (1) because Plaintiffs have not plausibly alleged that the panel agent is an agent of Defendants, any action on the part of the physician cannot be attributed to Defendants; and (2) even if Plaintiffs have plausibly alleged that the physician is an agent, they have not plausibly alleged that his failure to consider whether a vaccine is routinely available constitutes final agency action.

Plaintiffs in response first argue that there is a genuine dispute of material fact regarding whether the physician was an agent of Defendants and thus resolving the issue on a motion to dismiss is inappropriate. Second, Plaintiffs argue that the physician's failure to consider does count as final agency action because

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** # 9

the failure to consider was the foundation for the agency's ultimate decision to deny Mr. Hernandez Castro's visa.

                i.     *Whether Plaintiffs have plausibly alleged that the panel physician was an agent of Defendants*

       The APA defines "agency action" broadly to "includ[e] the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13); *see also id.* § 701(b)(2). This definition "is meant to cover comprehensively every manner in which an agency may exercise its power." *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 478 (2001) (citing *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 238 n.7 (1980)). Agency action can include actions taken at an agency's direction and/or by agents of the agency. *See San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 576 (9th Cir. 2019) (citing *Indep. Broker-Dealers' Trade Ass'n v. SEC*, 442 F.2d 132, 137 (D.C. Cir. 1971)).

       There is a genuine dispute of material fact regarding whether the panel physician was an agent of Defendants. At this stage in the proceedings, there is no evidence in the record to support how Defendants select and rely on panel physicians and to what degree the physician is independent from the agency and vice versa. However, because visa applicants are required to undergo a medical examination with a physician specifically designated by the consulate, this is sufficient to create a plausible allegation that a panel physician is an agent of Defendants. Thus, resolution of this issue on a motion to dismiss is inappropriate.

               ii.     *Whether Plaintiffs have plausibly alleged that the panel physician's failure to consider routine vaccine availability constituted final agency action*

       The Supreme Court has set forth "two conditions that generally must be satisfied for agency action to be 'final' under the APA": "'[f]irst, the action must mark the consummation of the agency's decision-making process—it must not be

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** # 10

of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 17778 (1997)).

First, Defendants argue that the panel physician's alleged failure to consider if the COVID-19 vaccine was routinely available was not a "decision" and thus cannot constitute final agency action. Second, Defendants argue that the panel physician's failure to recommend a blanket waiver for Mr. Hernandez Castro also does not constitute final agency action because this did not "mark the consummation" of the agency's decision-making process.

Plaintiff in response argues that the panel physician's failures to act do qualify as final agency action because Defendants relied on his examination and recommendation when making the ultimate decision whether to issue a visa to Mr. Hernandez Castro.

There are disputes of material fact that preclude resolution of this issue on a motion to dismiss. There is no evidence in the record regarding how the consulate considers the panel physician's report/findings when making the final visa decision. For example, it could be that the consulate official merely factors in the panel physician's report, but undergoes his/her own independent consideration as to whether the applicant meets the visa criteria. But it could also be that the panel physician is the only one who considers the applicant's medical eligibility for a visa and the consulate official rubber stamps the physician's finding that the applicant does not meet the vaccination requirements. Without more insight as to how the ultimate visa decision is made and construing the pleadings in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have plausibly alleged that the panel physician's failure to consider constituted final agency action. Thus, Plaintiffs have alleged sufficient facts to support that the Court has jurisdiction over their APA claim.

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** # 11

### b.    Whether the Court is precluded from judicial review

#### i.    *INA's statutory scheme*

The APA confers a general cause of action upon persons "adversely affected or aggrieved by agency action within the meaning of a relevant statute," 5 U.S.C. § 702, but withdraws that cause of action to the extent the relevant statute "preclude[s] judicial review," 5 U.S.C. § 701(a)(1). Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved. *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984). When determining whether APA judicial review is precluded, the Court must examine the statutory scheme to figure out (1) if Congress precluded all judicial review; and (2) if not, whether Congress still foreclosed judicial review to the particular class to which the plaintiffs belong. *Id.* at 345–46.

Some of the arguments in Defendants' motion regarding why the INA precludes judicial review address why consulate officers' visa denial decisions are unreviewable. However, because Plaintiffs have agreed that their claims challenging Mr. Hernandez Castro's ultimate visa denial are unreviewable, the only question for the Court is whether the panel physician's failure to consider COVID-19 vaccine availability and/or to recommend a waiver for Mr. Hernandez Castro is reviewable given the INA's statutory scheme.

Defendants argue that the panel physician's failure to recommend a waiver is still unreviewable under the APA because § 701(a)(2) precludes judicial review if the "action is committed to agency discretion by law." Here, 8 U.S.C. § 1182(g)(2)(b) states that the Attorney General "may waive the application of" the vaccination requirement if a panel physician deems that vaccination "would not be medically appropriate." Thus, Defendants argue that the use of the word "may"

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** # 12

suggests that the decision to waive the vaccination requirement is solely committed to the Attorney General's discretion and thus is unreviewable under the APA.

Plaintiffs in response argue that, even though the decision whether to waive the vaccination requirement is solely committed to agency discretion, they are still allowed to challenge the arbitrary and capricious process that led up to the decision—specifically, the fact that the panel physician failed to consider the routine availability of the COVID-19 vaccination in Mexico before making his recommendation to the consulate official. Plaintiffs argue that the panel physician's duty to consider this factor was nondiscretionary and therefore Plaintiffs are allowed to challenge the panel physician's failure to follow the proscribed process under the APA.

The Court was unable to find any caselaw addressing the particular question of whether a physician's failure to consider a factor affecting a noncitizen's potential medical ineligibility is reviewable under the APA. *See, e.g.*, *Dominguez v. United States Dep't of State*, No. CV 19-5327 PSG (SSX), 2020 WL 5026878, at *6 (C.D. Cal. May 22, 2020) (simply holding that "the APA does not provide an avenue for judicial review of a consular officer's adjudication of a visa on the merits, even if based on legal error," but not addressing whether a noncitizen can challenge the process leading up to the visa adjudication).

However, there is caselaw from other immigration contexts that the Court finds persuasive which distinguishes between challenging the merits of a discretionary immigration decision and challenging the nondiscretionary process leading up to that decision. For example, in *Drammeh v. Clark*, No. C20-0045-RAJ-MAT, 2020 WL 5122445, (W.D. Wash. July 21, 2020), *report and recommendation adopted*, No. 2:20-CV-00045-RAJ, 2020 WL 5111252 (W.D. Wash. Aug. 31, 2020), the plaintiffs (also a married couple) brought APA claims related to the denial of an asylee relative petition. Specifically, the plaintiffs challenged USCIS's denial of the wife's Form I-730 Refugee/Asylee Relative

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** # 13

Petition, requesting that her husband be able to join her the spouse of an asylee. USCIS stated that its denial was because (1) the wife failed to show that her marriage was valid; and (2) the wife failed to prove her husband's identity because USCIS alleged that her husband had previously filed immigration applications using different birth dates, different countries of origins, and counterfeit documents. USCIS's denial of the petition was not appealable.

The government in that case opposed the plaintiffs' APA claims, arguing that the District Court for the Western District of Washington lacked jurisdiction to hear the plaintiffs' APA challenges because the immigration removal statute precluded judicial review. The district court agreed that it lacked jurisdiction under the APA to review the ultimate decision to deny a Form I-730 Petition because such a decision was committed to agency discretion. *Id.* at * 10. However, the district court noted that the decision whether to grant or deny a Form I-730 petition is essentially a two-part decision: (1) first, the USCIS must make an eligibility determination regarding whether the person seeking derivative asylee status is the principal's spouse or child; and only then (2) decide whether derivative asylee status should be granted.

The district court thus found that the plaintiffs were not challenging the second step in the process (*i.e.*, the agency's decision to deny the Form I-730 Petition). Instead, the plaintiffs were challenging the *first* step in the process: USCIS's determination that the husband was ineligible for derivative asylee status, which the district court found was not a discretionary determination. Thus, the district court allowed the plaintiffs to proceed with their APA challenge. *Id.* at *1011. ("With respect to the eligibility requirement—that the person seeking derivative asylee status be the principal's spouse or child—the statute does not state that this determination is discretionary. Thus . . . the Court concludes that § 1252(a)(2)(B)(ii) does not strip it of jurisdiction to review USCIS's eligibility decision, but the statute does preclude the ultimate discretionary decision . . . .

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** # 14

Accordingly, the Court deems it appropriate to review USCIS's eligibility analysis under the APA."). In support of its decision, the district court cited the Ninth Circuit's decisions in *Singh v. Holder*, 591 F.3d 1190 (9th Cir. 2010) and *Gutierrez v. Holder*, 662 F.3d 1083 (9th Cir. 2011), which similarly distinguished between the agency's determination of a noncitizen's eligibility for a certain kind of relief (nondiscretionary) and the agency's decision to ultimately grant that relief (discretionary).

Here, the Court similarly concludes that 8 U.S.C. § 1182(a)(1)(A)(ii), (g)(2)(B) does not preclude APA review of the agency's determination of a noncitizen's medical ineligibility for a visa—specifically, the panel physician's determination that a vaccination waiver for Mr. Hernandez Castro was not warranted, even though the panel physician did not consider whether the COVID-19 vaccine was routinely available. The CDC guidelines regarding the COVID-19 vaccination requirement for noncitizens applying for visas specifically state that "[p]anel physicians *must* be aware of local availability of and eligibility criteria for COVID-19 vaccines so they can determine if their applicants are eligible for a waiver. As with all vaccinations, there are specific blanket waivers that cover reasons why an applicant did not receive the required vaccination."[2] Thus, because there is nothing in this guidance to suggest that a panel physician has discretion over the decision to consider whether a noncitizen visa applicant is eligible for a vaccination waiver, Plaintiffs' APA claim is not barred by the INA's statutory scheme.

//

_____

[2] U.S. Centers for Disease Control, *CDC Requirements for Immigrant Medical Examinations: COVID-19 Technical Instructions for Panel Physicians* (Oct. 4, 2021), https://www.cdc.gov/immigrantrefugeehealth/panel-physicians/covid-19-technical-instructions.html (emphasis added).

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** # 15

ii.    *Doctrine of consular nonreviewability*

The parties' arguments regarding the doctrine of consular nonreviewability are substantially similar to their arguments regarding statutory preclusion of APA review. Defendants argue that the doctrine of consular nonreviewability precludes Plaintiffs from challenging the visa denial decision, including the process leading up to the denial. Conversely, Plaintiffs argue that they are allowed to challenge Defendants' failure to follow their own rules and processes, even though they are not allowed to challenge the merits of the ultimate visa denial.

The doctrine of consular nonreviewability holds that "a consular official's decision to issue or withhold a visa is not subject either to administrative or judicial review." *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986); *Ventura–Escamilla v. INS*, 647 F.2d 28, 30 (9th Cir. 1981); *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999). The doctrine is rooted in Congress' plenary power over immigration: the "power to exclude aliens is 'inherent in sovereignty, necessary for maintaining normal international relations and defending the country against foreign encroachments and dangers—a power to be exercised exclusively by the political branches of government." *See Kleindienst v. Mandel*, 408 U.S. 753, 765 (1972); *see also Allen v. Milas*, 896 F.3d 1094, 1105 (9th Cir. 2018).

However, the Ninth Circuit has recognized an exception to the doctrine of consular nonreviewability. In *Patel v. Reno*, the Ninth Circuit held that "when [a] suit challenges the authority of the consul to take or fail to take an action as opposed to a decision within the consul's discretion," the doctrine does not stand in the way of a federal court exercising jurisdiction. 134 F.3d 929, 932 (9th Cir. 1997). In other words, *Patel* states that, if the underlying challenge is that a consulate officer acts or fails to act regarding one of their *nondiscretionary* duties, the doctrine of consular nonreviewability does not bar judicial review. *See Davila v. Holder*, No. C-09-5058 JCS, 2010 WL 1264670, at *4–5 (N.D. Cal. Mar. 30,

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** # 16

2010) (citing *Nwansi v. Rice*, No. C 06-0003 TEH, 2006 WL 2032578, at *3 (N.D. Cal. July 18, 2006)).

Courts have interpreted and applied the *Patel* exception differently. For example, in *Davila v. Holder*, the District Court for the Northern District of California found that the doctrine of consular nonreviewability did *not* bar the plaintiff's challenge to the consulate's failure to accept a noncitizen's motion to reconsider its decision denying his visa. 2010 WL 1264670 at * 5. Specifically, the district court concluded that, because 22 C.F.R. § 42.81(e) is phrased using mandatory "shall" language, the consulate's duty to reconsider the plaintiff's visa denial was nondiscretionary. *Id.*

Conversely, in *Shiu Ying Wong Woo v. Leavitt*, the District Court for the Eastern District of California found that the doctrine of consular nonreviewability *did* bar the plaintiff's lawsuit challenging (1) the consulate's decision to deny his visa application solely based on his admission to experimental drug use, rather than based on any evidence of his prosecution or conviction for violating controlled substances laws; (2) the panel physician improperly reporting that the plaintiff's past drug use was a "Class A" or "Class B" medical condition, which thus made the plaintiff inadmissible to the United States; (3) the consulate's decision to delegate its authority to the panel physician to independently review and adjudicate the plaintiff's visa application; and (4) the consulate's decision to deny the plaintiff an opportunity to challenge the inadmissibility finding through administrative review. No. 2:07-CV-2019-GEB-GGH, 2008 WL 2774448, at *1 (E.D. Cal. June 27, 2008). The district court dismissed all of the plaintiff's claims, stating that all of his challenges still amounted to challenges of the ultimate decision to deny his visa, which is impermissible. The district court also distinguished *Patel v. Reno* by stating that *Patel* involved a challenge to the consulate's refusal to make a decision regarding a pending visa application, whereas in this case, the consulate had already made a decision—specifically, a decision to deny the plaintiff's visa.

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** # 17

Defendants in this case rely on one case in particular: *Capistrano v. Dep't of State*, 267 F. App'x 593 (9th Cir. 2008), an unpublished Ninth Circuit case. Defendants place great emphasis on this language in particular regarding the doctrine of nonreviewability: "[t]hat the Appellants characterize their complaint as one challenging the process followed by the consulate rather than its ultimate decision does not exempt the case from this well-settled doctrine. *See Loza–Bedoya v. Immigration and Naturalization Service,* 410 F.2d 343, 347 (9th Cir.1969). At its core, the relief sought by the Appellants would require the Manila consulate to revisit its decision denying the visa applications. Issuing such relief would be exactly what the doctrine of consular nonreviewability prevents us from doing." *Id.* at 59495.

Here, Plaintiffs' challenge is not barred by the doctrine of consular nonreviewability. First, a panel physician's duty to consider whether a noncitizen visa applicant qualifies for a vaccine waiver is a nondiscretionary duty, which puts Plaintiffs' challenge within the boundaries of the *Patel* exception (*i.e.*, because they are challenging the panel physician's failure to take an action that was not within his discretion).

Additionally, unlike in *Wong* where the plaintiff was challenging the panel physician's action, Plaintiffs are challenging the panel physician's *inaction*, which makes it more akin to *Patel* and *Davila*. *See Davila*, 2010 WL 1264670 at *6 (In *Wong* . . . the court was not presented with the question of whether a consular officer had failed to perform a duty that it was required by federal law to perform.").

Finally, the agency action that the plaintiffs were challenging in *Capistrano* was the consulate's choice to defer to medical providers' determinations of drug abuse and addiction, even though—under the relevant federal regulations—the plaintiffs' drug use would not have been classified as abuse or addiction. *Capistrano et al. v. U.S. Dep't of State*, No. 05-CV-6408-PA, ECF No. 24 (May

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** # 18

26, 2006). The District Court for the Central District of California dismissed the plaintiffs' claims based on the doctrine of consular nonreviewability because, it reasoned, "the relief Plaintiffs seek would require the Court to review the denials of the immigrant visas by the consular officials." *Id.* at 3.

However, the present case does not raise the same concerns as were present in *Capistrano*. Here, Plaintiffs are simply requesting that Defendants follow their own processes when considering visa applications. Also unlike in *Capistrano* and *Wong*, the Court's decision to grant relief in this case would not necessarily have an effect on the ultimate visa decision—even if the Court compelled the panel physician to consider the routine availability of the COVID-19 vaccine, Defendants could still decide to deny Mr. Hernandez Castro's visa application (*i.e.*, find that the COVID-19 vaccine was routinely available at the time and that Mr. Hernandez Castro did not qualify for a blanket waiver).

Thus, because neither statutory preclusion nor the doctrine of consulate nonreviewability bars Plaintiffs' APA challenge, the Court denies Defendants' motion to dismiss Plaintiffs' APA claim.

2. <u>Plaintiffs' procedural due process claim</u>

Ms. Hernandez argues that Defendants violated procedural due process because she has a right to constitutionally adequate procedures in the adjudication of her husband's visa application. Defendants argue that this claim fails for two reasons: (1) because it too is barred by the doctrine of consular nonreviewability; and (2) because, under Supreme Court and Ninth Circuit caselaw, the agency is only required to provide the U.S. citizen spouse a "facially legitimate and bona fide reason" for the denial of the noncitizen spouse's visa in order to protect procedural due process.

//

//

//

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** # 19

### a.    Whether this claim is barred under the doctrine of consular nonreviewability

For the same reasons articulated in the APA section, the Court finds that the doctrine of consular nonreviewability does not bar Plaintiffs' due process challenge. Because Plaintiffs are challenging the agency's failure to perform a nondiscretionary duty, this falls under the *Patel* exception to the doctrine. *Contra Benjamin v. United States Dep't of State*, No. 17-CV-03587-LB, 2018 WL 1142124, at *4 (N.D. Cal. Mar. 2, 2018) (finding that the doctrine of consular nonreviewability barred a due process violation claim).

### b.    Whether Defendants provided a facially legitimate and bona fide reason

Defendants argue that Ms. Hernandez Castro's procedural due process claim fails because Defendants provided her with a facially legitimate and bona fide reason for her husband's visa denial—namely, that he had failed to receive the COVID-19 vaccination as required by statute. Plaintiffs in response argue that there is a genuine dispute of material fact regarding whether the reason for the denial was bona fide, given the panel physician's failure to consider routine availability of the COVID-19 vaccine.

The Ninth Circuit in *Bustamante v. Mukasey* held that, though a consular official's decision to grant or deny a visa is generally not subject to judicial review, there is a limited exception "where the denial of a visa implicates the constitutional rights of American citizens." 531 F.3d 1059, 1061 (9th Cir. 2008) (citing *Mandel*, 408 U.S. 753). Under *Bustamante* and *Mandel*, "a U.S. citizen raising a constitutional challenge to the denial of a visa is entitled to a limited judicial inquiry regarding the reason for the decision. As long as the reason given is facially legitimate and bona fide the decision will not be disturbed." *Id.* at 1062.

For example, in *Bustamante*, Alma Bustamante, the wife, asserted a procedural due process challenge to the denial of her husband Jose's visa

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** # 20

application. Ms. Bustamante was told that her husband's visa application was denied because the consulate "had reason to believe" that Jose was a controlled substance trafficker. However, Ms. Bustamante argued that that the consulate officer was operating on a mistaken belief and requested that the Ninth Circuit remand to the district court for further factual development, specifically to require the defendants to present specific evidence to substantiate that Jose was a drug trafficker.

The Ninth Circuit rejected Ms. Bustamante's claim. Pursuant to the *Mandel* inquiry, the Ninth Circuit first found that the agency provided her a "plainly [] facially legitimate reason" for her husband's denial—specifically that being a controlled substance trafficker is a statutory basis for inadmissibility under 8 U.S.C. § 1182(a)(2)(C). *Id.* Second, the Ninth Circuit found that Ms. Bustamante had failed to allege sufficient bad faith to create a genuine dispute of material fact regarding whether the reason was bona fide. Although it acknowledged the Bustamantes' allegation that Jose was not and had never been a drug trafficker, the Ninth Circuit stated that the Bustamantes (1) failed to allege that the consular official did not in good faith believe the information he had regarding Jose's drug trafficking; and (2) even though the consulate offered to make an informant deal with Jose on the basis of its belief that he was a drug trafficker, the Bustamantes failed to allege that this was illegal or improper. *Id.* at 1062-63. Thus, the Ninth Circuit concluded that Ms. Bustamante had failed to state a valid procedural due process claim.

Like in *Bustamante*, it is indisputable that Mr. Hernandez Castro's failure to obtain the COVID-19 vaccination as required under the statute was a statutory basis for inadmissibility and thus was a facially legitimate reason for the denial. However, Plaintiffs have plausibly alleged that this reason was not bona fide given that the panel physician failed to consider a key factor that may have affected this ground of inadmissibility—namely, whether the COVID-19 vaccination was

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** # 21

routinely available to Mr. Hernandez Castro. Thus, the Court denies Defendants'

motion to dismiss Plaintiffs' procedural due process claim.

    3.    Plaintiffs' mandamus claim

    Plaintiffs argue that they are entitled to mandamus relief. Specifically,

Plaintiffs request an order from the Court requiring (1) Defendants to reconsider

the initial decision to deny Mr. Hernandez Castro's visa application pursuant to 8

C.F.R. § 42.81(e); and (2) if, upon reconsideration, the consulate no longer finds

that Mr. Hernandez Castro is inadmissible, to require Defendants to consider his

previous Form I-601A waiver valid and not revoked. Defendants argue that

Plaintiffs' claim for mandamus relief fails for two reasons: (1) Plaintiffs have not

established that they are "clearly and indisputably" entitled to the relief they seek,

especially because the actions they request are not nondiscretionary, ministerial

acts; and (2) Plaintiffs have alternative means to obtain the relief they seek, which

defeats their mandamus claim.

    Plaintiffs in response first argue that Defendants' duty to reconsider Mr.

Hernandez Castro's visa denial, given that there is now additional evidence

overcoming his original ground of inadmissibility, is mandatory and thus is

appropriate for a mandamus claim. Second, Plainti ffs argue, if reconsideration is

granted and the visa denial is reversed, it would logically follow that Mr.

Hernandez Castro's Form I-601A waiver would be reinstated, given that he would

no longer have any other grounds of inadmissibility. Finally, Plaintiffs argue that

there is a genuine dispute of material fact regarding whether forcing Mr.

Hernandez Castro to apply for a new Form I-601A waiver constitutes adequate

relief.

    The Mandamus Act states: "The district courts shall have original

jurisdiction of any action in the nature of mandamus to compel an officer or

employee of the United States or any agency thereof to perform a duty owed to the

plaintiff." 28 U.S.C. § 1361. Mandamus is considered to be an extraordinary

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** # 22

remedy. *Barron v. Reich,* 13 F.3d 1370, 1374 (9th Cir.1994) (citing *Stang v. IRS,* 788 F.2d 564, 565 (9th Cir. 1986)). A district court may issue a writ of mandamus under § 1361 "only when (1) the plaintiff's claim is 'clear and certain'; (2) the defendant official's duty to act is ministerial, and 'so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available." *Barron,* 13 F.3d at 1374. As a general rule, "mandamus may not be used to impinge upon an official's legitimate use of discretion." *Id.* at 1376. The only exception exists when "statutory or regulatory standards delimiting the scope or manner in which such discretion can be exercised . . . have been ignored or violated." *Id.*

There are genuine disputes of material fact regarding whether Plaintiffs can receive mandamus relief regarding their request for reconsideration of Mr. Hernandez Castro's visa denial. Specifically, there are unanswered questions regarding (1) whether reinstatement of the Form I-601A waiver is available as mandamus relief or whether the only avenue to receive this waiver is through reapplication; and (2) whether requiring Mr. Hernandez Castro to reapply for a Form I-601A waiver is an adequate alternative means of relief, especially if there are any timeline concerns with the one-year window in which Plaintiffs have to request reconsideration.[3] Thus, the Court denies Defendants' motion to dismiss Plaintiffs' mandamus claim.

---

[3] There is also a dispute of material fact regarding whether Plaintiffs have formally requested reconsideration. 8 C.F.R. § 42.81(e) suggests that a request for reconsideration is made if the noncitizen provides the consulate evidence that would overcome his previous ground of inadmissibility—which Mr. Hernandez Castro did here when he provided his proof of COVID-19 vaccination. However, it is unclear to the Court whether there any other procedural requirements that Plaintiffs have to satisfy in order to initiate the reconsideration process. It is also unclear to the Court whether Defendants are already reviewing the request for

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** # 23

Accordingly, **IT IS HEREBY ORDERED:**

1.      Defendants' Motion to Dismiss the Amended Complaint, ECF No. 6, is **DENIED**.

2.      The Court shall set a scheduling conference with the parties by separate notice to discuss setting a trial date.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to file this Order and provide copies to counsel.

**DATED** this 11th day of April 2022.



Stanley A. Bastian
Chief United States District Judge

———————————————

reconsideration or if they are refusing to consider the request, given Mr. Hernandez Castro's lack of a valid Form I-601A waiver.

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** # 24